## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2016, 6:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Roger Lopez-Rivera, *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff*. | June 30, 2016 <br><br> Court of Appeals Case No. 49A04-1510-CR-1542 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Allan Reid, Judge Pro Tempore <br><br> Trial Court Cause No. 49G05-1406-MR-32282 |

**Brown, Judge.**

[1] Roger Lopez-Rivera appeals his sentence for aggravated battery, a class B felony. Lopez-Rivera raises two issues which we revise and restate as:

I. Whether the trial court abused its discretion in sentencing him; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm and remand.

## Facts and Procedural History

[2] Lopez-Rivera and Kimberly Lopez-Rivera were married in November 2012, and in June 2014 their marriage was coming to an end. Kimberly purchased a bus ticket from Indianapolis to Fort Wayne. She went to the bus station on June 16, 2014, but was mistaken about the date and discovered her departure was not until the following day, and she returned to Lopez-Rivera's house. Kimberly told Lopez-Rivera that she was planning a trip to Fort Wayne and he slapped her. She left and went to her friend Marie's house, one block away, and later she and Marie walked to Samantha's house. A person named David, was at Samantha's house and asked Kimberly about the mark on her face, and she told him about the earlier incident. David stated that he was going to walk Kimberly and Marie home, and the three began walking from Samantha's house to Marie's house.

[3] They walked on the sidewalk past Lopez-Rivera's house, and David yelled toward the house, saying "[c]ome hit a man, not a woman." Transcript at 83. David and Kimberly walked toward a convenience store while Marie spoke

with another person. While walking toward the convenience store, Kimberly saw Lopez-Rivera holding a knife in each of his hands. David ran away, and Lopez-Rivera chased after him. Lopez-Rivera then stopped chasing David, ran towards Kimberly, and stabbed her in her left arm with the knife in his right hand. Kimberly started to fight back and threw punches, although she did not know whether or not she struck him. Lopez-Rivera then stabbed Kimberly in her forehead, and as he did so, Kimberly punched the knife and the knife broke. Lopez-Rivera then stabbed her near her neck and ran away. Kimberly pulled the knife out of her neck, looked at it, and dropped it.

[4] A woman named Sharron, who was picking up her children from her grandmother's house nearby, ran to Kimberly and told her mom and sister to call 911. Sharron could hear air bubbles coming from the injury on Kimberly's neck and tried to cover the wound. Kimberly suffered lacerations to her forehead, neck, and shoulder and was taken to a hospital. The wound to her neck showed that the knife came from above and went down, entered between the first and second rib just under her clavicle, caused damage to the upper and middle lobes of Kimberly's right lung, caused blood and air to be trapped in her chest cavity, and was potentially lethal. She required a chest tube for at least five days and was hospitalized for eight days.

[5] On June 18, 2014, the State charged Lopez-Rivera with attempted murder, a class A felony. A jury trial was held on August 20, 2015, at which Lopez-Rivera's counsel proposed that the jury be instructed on a lesser-included offense of aggravated battery, and the court indicated it was inclined to give the

instruction. Lopez-Rivera stated that he had been looking at law about battery and that "if [he] (indecipherable) of attempt murder [he] cannot be find guilty on those charges," and in response the court explained that Lopez-Rivera could be found guilty of lesser-included offenses. Transcript at 239. Lopez-Rivera's counsel informed the court that he and Lopez-Rivera had the conversation a number of times before and that he had explained to him at great length that he would be asking the jury to find him guilty of something less than attempted murder. The court then again clarified that, if the jury did not find him guilty of attempted murder, it still had the option to convict him of the less serious offense. The court explained that the jury could find him guilty of attempted murder, guilty of aggravated battery, or not guilty of either offense.

[6]   During closing argument, Lopez-Rivera's counsel agreed that Lopez-Rivera committed the act which resulted in the injuries to Kimberly but argued that he did not have the specific intent to kill or murder her and asked the jury to convict Lopez-Rivera of aggravated battery. In its final instructions, the court instructed the jury on the crimes of attempted murder, a class A felony, and aggravated battery, a class B felony. The jury found Lopez-Rivera not guilty of attempted murder and guilty of aggravated battery, a class B felony.

[7]   At the beginning of Lopez-Rivera's sentencing hearing, the court stated in part:

> So we were in Court on August 20th for a jury trial. Mr. Rivera went to trial on the charge of attempt[ed] murder. The jury convicted him of aggravated battery, that's a Class B felony as a lesser included offense. I think Mr. Rivera should by very grateful to [his defense counsel] for having that done, because

that would not have happened otherwise. Are the parties ready for sentencing?

*Id.* at 280-281.

[8] The prosecutor asked the court to sentence Lopez-Rivera to eighteen years executed, and Lopez-Rivera's defense counsel asked the court to sentence Lopez-Rivera to ten years with four years suspended. Following arguments, the court stated:

> All right. Court finds that Mr. Rivera does have a violent history. True he only has one actual conviction, and that was in 2006 Harrison County, Mississippi where he was convicted of aggravated battery and served 4 years in prison. In 2014 he was arrested in Clinton County, Indiana for battery resulting in serious bodily injury. Now he wasn't convicted of that, but it was also a domestic incident. He also acknowledged in the PSI he had been arrested twice for fighting when he was age 14. He also acknowledged that he is or was a gang member . . . . Court finds that criminal history to be aggravating. Court also finds especially aggravating the nature and the circumstances of the incident that took place here. He knocked his wife around earlier in the day and she left, and she was walking back along the street with some young kid who was running his mouth of course, but there was no indication he was armed at all. So Mr. Rivera was coming out, engaging in fisticuffs, took the time to go into the kitchen and grab two knives that had blades that were 8 to 10 inches long. These weren't just to slice a couple of carrots, these were big knives, ran across the street, the young man was smart enough to run away, he chased him through a parking lot, significant distance he ran with the knives, when the young man got away he then ran up to Kim. She is standing there, she is not provoking him, she's not doing anything, just standing there, he runs up stabs her in the left shoulder, stabs in the forehead hard

enough that the knife blade snapped. If the blade hadn't snapped she might have been killed. He stabs her in the shoulder deeply enough that two of the three lobes of the right lung were penetrated. And she would have bled to death if she hadn't received medical care. If that stab wound had been a little bit off he would have severed an artery. If it had been on the other side of the shoulder you would have penetrated her heart without much doubt. This was a potential fatal stab wound. So the Court finds those circumstances to be particularly aggravating.

*Id.* at 293-295. The court stated it did not find any mitigating circumstances.

[9] The court imposed a sentence of eighteen years with fourteen years executed and four years suspended and ordered that he be placed on probation for two years.[1] After imposing the sentence, the court stated:

I would like to point out, I think I touched on it earlier. Mr. Rivera, you need to be extremely grateful to [defense counsel]. At trial you expressed some concern about offering the lesser included offense. There is not a doubt in my mind if you had only been facing attempted murder, you would have been convicted of that. You would have been facing up to 50 years in prison. So you should be very grateful to [defense counsel]."

*Id.* at 296-297.

---

[1] The Abstract of Judgment, under "Disposition" for the charge of attempted murder, states "Dismissed," and for the charge of aggravated battery, states "Plea By Agreement." Appellant's Appendix at 16. The sentencing order, under "Disposition" for the charge of attempted murder, states "Dismissed," and for the charge of aggravated battery, states "Finding of Guilty." *Id.*

## Discussion

### I.

[10] The first issue is whether the trial court abused its discretion in sentencing Lopez-Rivera. We review the trial court's sentence for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[11] Lopez-Rivera asserts that the court disagreed with the jury's verdict, that his sentence was enhanced in part because the court believed he should have been convicted of attempted murder, and that this Court should follow the principle set forth in *Gambill v. State*, 436 N.E.2d 301 (Ind. 1982), and reduce his sentence to the advisory term of ten years. In response, the State maintains in part that the court never expressed any disagreement with the jury's verdict, that "[t]he most one could say about the court's statements in this case, is that the court regarded defense counsel's strategy to offer a lesser included option to have been prudent strategy," and that, unlike in *Gambill*, the court did not impose a maximum sentence. Appellee's Brief at 12-13.

[12] In *Gambill*, the defendant was convicted of voluntary manslaughter and sentenced to twenty years imprisonment. 436 N.E.2d at 302. The trial court stated in part: "I think . . . the evidence would justify a conviction of murder. I think in fact that was the offense committed. The jury, as it had a right to do, returned a verdict of voluntary manslaughter for whatever reason, and I think it

was not the right verdict." 436 N.E.2d at 304. The Indiana Supreme Court stated in part, that "[w]hile the trial court has considerable discretion in sentencing, . . . it is not unbridled," that the jury had found the defendant guilty of voluntary manslaughter, a class B felony, and that "[i]t was then the function of the court to pronounce sentence for that crime." *Id.* at 304-305. The Court held that, although the circumstances of the crime may well have warranted the assessment of a maximum sentence, that sentence "nevertheless must be for the crime of which the defendant was found guilty and not one of which he was acquitted," that "[i]t is clear that the trial court enhanced the sentence to compensate for what he believed to be an erroneous verdict," and that, "[i]n so doing, he invaded the province of the jury." *Id.* at 305. The Court remanded with instructions to resentence the defendant to ten years imprisonment. *Id.* *See also Hamman v. State*, 504 N.E.2d 276, 278-279 (Ind. 1987) (noting, where the defendant was convicted of voluntary manslaughter rather than murder, it was clear from the trial judge's statements that it considered the jury verdicts erroneous and that, while a trial judge is not prohibited from expressing his personal disagreement with a jury's verdict, the judge is prohibited from enhancing a defendant's sentence based upon his personal disagreement with the verdict, that the judge displayed hostility to the jury verdict, and holding that the enhanced sentence was the result of improper considerations).

[13] The record in this case shows that, at trial, Lopez-Rivera's counsel proposed that the jury be instructed on the lesser-included offense of aggravated battery, that Lopez-Rivera questioned the instruction, and that the court spent

considerable time discussing the instruction with him. The court's statements at sentencing were a reference to the exchanges between it and Lopez-Rivera at trial regarding the instruction and the fact that the jury had the option to find him guilty of attempted murder or the lesser-included offense of aggravated battery. The record does not support the conclusion that the trial court imposed a sentence above the advisory sentence in an effort to compensate for an acquittal the trial court believed was erroneous. Unlike in *Gambill*, the court did not state that Lopez-Rivera should have been convicted of attempted murder and that it disagreed with the jury's verdict, and did not disparage the jury's inability to return a verdict on the charge of attempted murder. The court's comments reveal that, in determining Lopez-Rivera's sentence, the court considered Lopez-Rivera's criminal history and gang affiliation as well as the nature of his unprovoked attack on Kimberly and the scale of her injuries. The court's comments do not reflect that it was so resolutely opposed to the jury verdict so as to constitute an invasion of the province of the jury or as to render the sentence suspect. Further, the court did not impose the maximum sentence for the aggravated battery conviction. We are unpersuaded that Lopez-Rivera's sentence was intended to serve as compensation for his acquittal of attempted murder.

[14] Based upon the record and the trial court's comments, we cannot say that the court abused its discretion in sentencing Lopez-Rivera or that his sentence was based upon a crime of which he was acquitted. *See Wilson v. State*, 458 N.E.2d 654, 656 (Ind. 1984) (holding, where the defendant claimed the trial court based

the enhancement upon its belief the defendant was guilty of murder rather than manslaughter, that the court did "entertain a degree of skepticism regarding the evidence of sudden heat and the success which defense counsel had with the jury through use of his persuasive talents," that the court was "not however so resolutely opposed to the jury verdict as was the case in *Gambill*," and that "[c]onsequently we find that the statements of the trial judge were within the proper scope of his authority to make an evaluative statement of the circumstances surrounding the crime, and did not constitute an invasion of the province of the jury or render the enhancement suspect"), *reh'g denied*; *see also Ellis v. State*, 567 N.E.2d 1142, 1144 (Ind. 1991) (observing that the trial judge in no way reflected that he considered the jury verdict to be erroneous and stated that he accepted the verdict and that the judge identified facts to justify the enhanced sentence and holding the enhancement was not the result of improper considerations); *Kirkley v. State*, 527 N.E.2d 1116, 1118-1119 (Ind. 1988) (observing that "[n]either *Hamman* nor *Gambill* stand for the proposition that the jury's finding of guilty on a lesser included offense precludes the trial judge from examining the facts of the case to determine whether or not he should mitigate, enhance, or impose the presumptive sentence upon appellant," noting that, while the trial judge observed that the case did not fall into the category of some voluntary manslaughter cases where a homicide is committed on the spur of the moment in the heat of passion, the judge recognized that for whatever reason the jury had seen fit to discard the murder charge and to find the defendant guilty of the included offense of voluntary manslaughter and fully acknowledged this was the prerogative of the jury, and finding no error in the

trial court's enhanced sentence of fifteen years), *reh'g denied*; *Frierson v. State*, 543 N.E.2d 669, 670-672 (Ind. Ct. App. 1989) (observing the trial court's statements that, "although the jury did not find that the confinement was committed while armed with a deadly weapon, the victim's testimony that [the defendant] had told her he had a weapon to threaten . . . to coerce her into getting into the car is uncontradicted, and the jury verdict is not inconsistent with his [sic] testimony," and concluding that the record did not indicate that the trial judge sentenced the defendant to compensate for an erroneous jury verdict).

## II.

[15]    The next issue is whether Lopez-Rivera's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015).

[16]    Lopez-Rivera argues that he was born in Guatemala in a time of extraordinary violence, that he did not choose to be born into a life of poverty and violence, and that he emigrated to the United States out of fear for his life and he fears for

his life if he ever returns to Guatemala. He states that he apologized to Kimberly and the court, he acknowledged that he needs help with his substance abuse and anger, and that the advisory sentence of ten years with four years suspended and two years of supervised probation would be appropriate. He also argues that the abstract of judgment and sentencing order contain errors that must be corrected.

[17] The State asserts that Lopez-Rivera's attack was entirely unprovoked, brutal, and senseless and that he inflicted a potentially deadly wound that would have killed Kimberly without medical intervention. It also argues that Lopez-Rivera appears to have either entered or remained in this country illegally, he was a member of a criminal gang in Guatemala, he has a history of substance abuse, and that, while Guatemala was a violent and unstable place in the 1980s, "it is hard to discern any connection between the condition of a country three decades ago and the actions of a drunk and violent man who attacked his unarmed wife for no apparent reason." Appellee's Brief at 15.

[18] Our review of the nature of the offense reveals that Lopez-Rivera viciously attacked Kimberly, stabbing her in the shoulder, the forehead, and the neck. Kimberly's injuries, including the injuries to her right lung and chest cavity, were serious and required a lengthy hospitalization, and according to the trauma center physician who treated her, she very well could have died as a result of her injuries.

[19]  Our review of the character of the offender reveals that, at his sentencing hearing, Lopez-Rivera apologized for what happened, said that he never meant to hurt anybody, that he was drunk, and that he has "this problem that when I get upset I lose realization of what's going on and I don't know what I'm doing." Transcript at 283. According to the presentence investigation report ("PSI"), he was arrested for aggravated battery in Mississippi in 2006, and the PSI states "03/05/2008 Inmate Intake Mississippi DOC." Appellant's Appendix at 97. At the sentencing hearing, the prosecutor stated that Lopez-Rivera was convicted in Mississippi and served approximately four years in the Mississippi DOC, and Lopez-Rivera agreed that was correct. The PSI further states that he was charged with battery resulting in serious bodily injury, strangulation, and domestic battery in Indiana in 2014 and that the charges were dismissed. The PSI states that Lopez-Rivera reported that he was arrested twice for fighting at age fourteen and was placed in jail. The PSI further states that National Crime Information Center records reflect that Lopez-Rivera "had contact with Texas Border Patrol on or about 04/04/2006." *Id.* at 98.

[20]  The PSI also notes that Lopez-Rivera was born in 1989 in Guatemala, that he reported he moved to Indiana in 2011, and that he stated "he was a member of [a gang] from age ten (10) until 2013" and that "he cannot return to Guatemala, because [the gang] would like to kill him." *Id.* at 99. Lopez-Rivera reported that he first consumed alcohol when he was twelve years old, he is accustomed to drinking weekly until he is inebriated, he first experimented with marijuana when he was approximately twelve years old, he last used marijuana three

months prior to his arrest, he first snorted cocaine at approximately thirteen years of age, and he would snort cocaine weekly, he first used pills at age thirteen and last used pills in 2006, and that he used pills up to three times weekly to relax. He also indicated that he does not feel as though he has a drug or alcohol problem, that he was under the influence of five beers on the day of the incident, and that he has never participated in substance abuse treatment. The PSI also notes that his overall risk assessment score places him in the high risk to reoffend category.

[21] We do not find Lopez-Rivera's arguments compelling. After due consideration of the trial court's decision, we cannot say that the sentence of eighteen years with four years suspended and two years of probation is inappropriate in light of the nature of the offense and the character of the offender.

[22] We observe that the abstract of judgment and sentencing order indicate that the charge of attempted murder was dismissed, even though the jury found that Lopez-Rivera was not guilty of the charge, and that the abstract of judgment states there was a plea by agreement as to his aggravated battery conviction, even though Lopez-Rivera was found guilty of aggravated battery as a class B felony following a jury trial. We remand for an amended sentencing order and abstract of judgment for correction.

## *Conclusion*

[23] For the foregoing reasons, we affirm Lopez-Rivera's sentence and remand for an amended abstract of judgment and sentencing order consistent with this opinion.

[24] Affirmed and remanded.

Baker, J., and May, J., concur.